**CORPORACION INSULAR de SEGUROS, Plaintiff,**

v.

**Jose REYES MUNOZ, et al., Defendants.**

**Civ. No. 92–1651 (HL).**

United States District Court, D. Puerto Rico.

Feb. 24, 1994.

128

Danilo M. Eboli–Martinez, Goldman, Antonetti, Cordova & Axtmayer, San Juan, PR, Efren T. Irizarry–Colon, Arecibo, PR, Robert G. Post, Miami, FL, Jose L. Gonzalez–Castaner, Gonzalez Castaner, Ortiz Velez & Morales Cordero, San Juan, PR, for plaintiff.

Francisco M. Lopez–Romo, Old San Juan, PR, Dennis A. Simonpietri–Monefeld, Hato Rey, PR, Luis F. Abreu–Elias, Hato Rey, PR, Gregorio Lima, Bayamon, PR, David W. Roman, San Juan, PR, David Rive–Rivera, Ramon H. Vargas, San Juan, PR, Erasmo A. Reyes–Pena, San Juan, PR, Luis R. Rivera–Rodriguez, Hato Rey, PR, Efren T. Irizarry–Colon, Arecibo, PR, for defendants.

Gretchen Lopez-de-Victoria, pro se.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff Corporacion Insular de Seguros ("CIS") brought this action seeking recovery for losses resulting from embezzlement of monies by corporate insiders Jose A. Reyes Munoz ("Reyes"), Juan Santiago ("Santiago")[1] and Morgan Rivera Perez ("Rivera"). These corporate insiders, plaintiff alleges, acted together with defendants Rafael Fuentes Fernandez ("Fuentes") and Gamalier Reyes. Plaintiff brought this action under the Racketeer Influenced and Corrupt Orga-

---

1. Santiago is no longer a party to this lawsuit. *See,* docket no. 175.

nizations Act ("RICO"), conversion, unjust enrichment, breach of fiduciary duty, and fraud.

Before the Court is plaintiff's motion for summary judgment against defendants Reyes, Rivera, Fuentes, Fuentes & Fuentes,[2] Ana Delia Merced Torres ("Torres"), Tropi–Car Enterprises Corporation ("Tropi–Car"), the conjugal partnership constituted between Reyes and Carmen Marcano Sosa ("Marcano"), the conjugal partnership constituted between Rivera and Torres, and Gamalier Reyes. (*See* docket nos. 181, 225, 228, and 240). Except for Rivera, Torres, and the conjugal partnership constituted between them, none of the defendants have opposed plaintiff's motion.

The Court is precluded at this time to rule on this motion as to Reyes, the conjugal partnership constituted between Reyes and Marcano, and Tropi–Car because this action is stayed as to said defendants pending the resolution of bankruptcy proceedings. *See* docket nos. 231 and 230. After careful consideration of the issues presented, the Court grants plaintiff's motion as to Fuentes, Ga-

malier Reyes and Torres, and denies plaintiff's motion as to the conjugal partnership between Rivera and Torres. Plaintiff's motion as to Rivera is granted in part and denied in part.

## BACKGROUND

Plaintiff has divided its losses into two separate categories. The first category, the "Fraudulent Transaction" portion, includes losses resulting from the creation and payment of fraudulent insurance claims. The second category is the "Unauthorized Compensation" loss, which results from the illegal taking of corporate funds by defendants Reyes and Rivera.

### A. *FRAUDULENT TRANSACTION LOSS*

#### 1. *The Defrauding of CIS*

Plaintiff seeks summary judgment on eleven fraudulently written checks. The total loss equals $1,496,000.00, as shown in the following chart identifying the eleven checks.

| COMPOSITE EXHIBIT [3] | AMOUNT OF CHECK | DATE | PAYEE |
|---|---|---|---|
| A | $ 35,000.00 | 7/11/90 | REYES |
| A | 35,000.00 | 7/11/90 | RIVERA |
| B | 100,000.00 | 10/31/91 | FUENTES & FUENTES |
| C | 244,000.00 | 11/13/91 | SAAVEDRA |
| D | 167,000.00 | 11/20/91 | FUENTES AND/OR MARIANO RODRIGUEZ |
| E | 160,000.00 | 12/5/91 | FUENTES AND/OR CARMEN MALDONADO |
| F | 315,000.00 | 4/7/92 | FUENTES AND/OR CARMEN MONTALVO |
| G | 365,000.00 | 4/7/92 | SAAVEDRA |
| H | 50,000.00 | 4/10/92 | FUENTES |
| I | 10,000.00 | 4/10/92 | FUENTES |
| I | 15,000.00 | 4/10/92 | FUENTES |

On October 8, 1992, defendants Reyes, Rivera and Fuentes pled guilty to criminal charges of defrauding CIS. *See,* Plaintiff's Exhibits J, K, L, M, N, and O. The facts

agreed upon in the plea agreements are as follows:

From on or about October 1, 1991, and continuing to on or about May 1, 1992, the

---

**2.** Plaintiff refers to both Rafael Fuentes Fernandez and Fuentes & Fuentes collectively as "Fuentes" because plaintiff claims that while Rafael Fuentes Fernandez was serving as counsel herein, he was acting as representative of Fuentes & Fuentes.

**3.** The composite exhibit letters correspond to the exhibit attached to plaintiff's motion for summary judgment. Docket no. 181.

defendants ... aiding and abetting each other, devised a scheme to defraud "CIS" of money, by means of false and fraudulent representations and false claims by selecting from "CIS" files [sic] claims which, having been previously settled, reflected their status as "closed claims." Having selected the claims, the three defendants working inside "CIS" would assign cash reserves against a previously assigned valid claim number, and authorized the preparation and payment of a fictitious claim for non-existing persons and/or non-existing injuries. These checks would then be given to codefendant RAFAEL FUENTES FERNANDEZ, who was described as counsel of record for the fraudulent claims. This defendant would in turn negotiate the newly issued check and return to the other participants in the scheme, defendants JOSE REYES MUNOZ, MORGAN RIVERA, and JUAN SANTIAGO GONZALEZ, the agreed upon share and retain his own. No legal reason or valid obligation which required the "CIS" to pay for such claims existed at any time relevant to these allegations. (Plaintiff's Exhibit K).

Each defendant pled guilty to mail fraud and to aiding and abetting each other in the commission of said offense. The amended version of the facts state that defendants' defrauding of CIS included the issuance of seven checks totalling $1,401,000.00.

Concerning the four other checks involved in this summary judgment motion, two checks, in the sum total of $25,000.00, were payable to Fuentes.[4] These two checks were issued in connection with claim no. 182179, which was a case pending in Superior Court in Humacao, Civil No. 89–1533. The case was settled, however, and the settlement provision did not provide for attorney's fees and costs. See, Plaintiff's Exhibit I. Nevertheless, on the day the settlement check was issued, the two checks totalling $25,000.00 were issued to Fuentes. Reyes, in a sworn statement, admitted that these two checks were issued in order to defraud CIS. See, Plaintiff's Tab 8, 89–90.

The two remaining checks addressed by this summary judgment motion are each in the sum of $35,000.00 and are payable to Reyes and Rivera. These two checks were drawn from a Chicago bank account, which consisted of monies deposited from eleven CIS checks. The latter checks were issued payable to "Market Adjustment Bureau, Inc." (the "Bureau") supposedly to reimburse the Bureau for expenses incurred in adjusting claims. See, Plaintiff's Exhibit A. The Bureau, however, had not been involved with the claims. See, Sworn Statement of Madeline Figueroa, Plaintiff's Tab 3. Almost two months later, these eleven checks were deposited; however, they were deposited in the name of CIS, not in the name of the Bureau. See, Plaintiff's Exhibit A. On or about July 11, 1990, when defendants Rivera and Reyes caused to be issued the two checks for $35,-000.00 in their names, no entry was made and no entry was permitted to be made in the CIS bookkeeping ledger. See, Plaintiff's Exhibit A and the Sworn Statements of Felix Alejandro and Octavio Estrada, Plaintiffs' Tab 1 and 2. Defendant Rivera admits to the receipt of this money; however, he argues that plaintiff did not show the absence of any legitimate reason for his receipt. Defendant does not provide any documentation to support this allegation of legitimacy.

### 2. The Diversion of Funds to Tropi–Car

Defendant Reyes organized and is president of Tropi–Car, a Florida corporation. Reyes, his wife and his children are the shareholders of Tropi–Car. See, Sworn Statement of Reyes, Plaintiff's Tab 8 at 62–66. On May 1, 1992, Tropi–Car purchased a car wash in Tampa, Florida, by making a down-payment of $200,000. Defendants have pled guilty to embezzling monies from CIS. Defendant Reyes used said monies to make the down-payment for the car wash. Reyes has admitted that half of the down-payment came from an embezzled check in the sum of $315,000. See, Plaintiff's Exhibit F. Fuentes exchanged said check for four cashier's check, one of which was in the amount of $100,000 and used for the car wash pur-

---

4. One check was in the sum of $10,000.00 and the other was in the sum of $15,000.00. See, Plaintiff's Exhibit I.

chase. *See,* Sworn Statement of Reyes, Plaintiff's Tab 8 at 62–66. The remaining $100,000 for the down-payment was withdrawn by Reyes from a bank account consisting solely of embezzled CIS funds. *See,* Plaintiff's Exhibits C, E, and P.

### 3. *The Diversion of Funds to Torres*

Defendants pled guilty to the issuance of a fraudulent CIS check payable to Fuentes in the amount of $315,000. The check was then exchanged for four separate checks. Fuentes issued one of the four checks payable to Rivera in the sum of $50,000 and another payable to Torres in the same amount. *See,* Plaintiff's Exhibit F. Thereafter, Torres endorsed her check.

Additionally, Rivera, Torres' husband, deposited $125,000, stolen CIS monies, into his own bank account. *See,* Plaintiff's Exhibit C and F. Later, on May 18, 1992, Rivera closed said account and obtained a cashier's check in the amount of $100,000. *See,* Plaintiff's Exhibit Q. Rivera endorsed said cashier's check over to Torres, who used the funds to purchase a certificate of deposit. *Id.*

In defendant Torres' opposition to plaintiff's motion, she documents the fact that even though Torres and Rivera are married, they signed a pre-nuptial agreement precluding the formation of a conjugal partnership between them.

### B. *THE UNAUTHORIZED COMPENSATION LOSS*

Since 1989, Reyes and Rivera have received more than $750,000 in excess compensation. Reyes and Rivera received excess compensation in a sum of approximately $493,970.46 and $267,476.17 respectively. Below is a table of compensation payments made to Reyes and Rivera prepared in a sworn statement by a Certified Public Accountant who is the designated internal auditor for plaintiff. Plaintiff's Tab 5.

### SUMMARY OF PAYMENTS MADE TO JOSE A. REYES MUNOZ

| YEAR | AUTHORIZED COMPENSATION | AMOUNT TAKEN | EXCESS AMOUNT TAKEN |
|------|-------------------------|--------------|---------------------|
| 1989 | $120,000.00 | $328,275.82 | $208,275.82 |
| 1990 | 120,000.00 | 220,012.44 | 100,012.44 |
| 1991 | 150,000.00 | 272,682.20 | 122,682.20 |
| 1992 | 50,000.00 | 113,000.00 | 63,000.00 |
| TOTAL | $440,000.00 | $933,970.46 | $493,970.46 |

### SUMMARY OF PAYMENTS MADE TO MORGAN RIVERA

| YEAR | AUTHORIZED COMPENSATION | AMOUNT TAKEN | EXCESS AMOUNT TAKEN |
|------|-------------------------|--------------|---------------------|
| 1989 | $ 66,000.00 | $149,212.22 | $ 83,212.22 |
| 1990 | 66,000.00 | 136,743.95 | 70,743.95 |
| 1991 | 87,600.00 | 162,320.00 | 74,720.00 |
| 1992 | 29,200.00 | 68,000.00 | 38,800.00 |
| TOTAL | $248,800.00 | $516,276.17 | $267,476.17 |

Codefendants Reyes and Rivera received the excess compensation, the auditor set forth in his sworn statement, by drawing CIS monies from various bank accounts on which they were signatories. In addition, Reyes received a check in the amount of $61,638.18 as a purported loan from CIS. The auditor, however, never found evidence that reflected this loan nor of its repayment by Reyes.

Codefendant Rivera, in his opposition to plaintiff's motion, admits receiving all of the money listed above. He argues, however, that the excess compensation consisted of lawful bonuses. Rivera provides no documentation to support his allegation. In fact, the only evidence of authorized bonuses concerns the 1991 year and is contained in a November 29, 1990 letter to Braulio Bermú-

dez. Plaintiff's Tab 5. This letter states that effective December 1, 1990, Rivera's two annual bonuses will constitute 20% of his entire compensation, and his basic salary will equal 72%. The amount of authorized salary for 1991 totalled $87,600.00. In accordance with the November, 1990 letter, Rivera's bonuses should have equalled only $24,333.33; the excess amount taken, however, was $162,320.00. There is no other evidence concerning bonuses for the other years.

## STANDARD

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). A party failing to oppose a motion for summary judgment waives the right to controvert any facts asserted by the moving party in its motion or in the supporting materials accompanying it. *Jaroma v. Massey*, 873 F.2d 17, 21 (1st Cir.1989). A court will accept as true the material facts put forth by the moving party with proper support in the record. *Id.*; U.S.Dist.Ct.Rules D.P.R. Rule 311.12.

## DISCUSSION

As stated above, plaintiff's motion for summary judgment divides its claims into two categories: the fraudulent transaction loss and the unauthorized compensation loss. As mentioned earlier, the Court will not discuss the motion as to Reyes, the conjugal partnership between Reyes and Marcano, and Tropi–Car because of the stay arising from the bankruptcy proceeding.

## A. THE FRAUDULENT TRANSACTION LOSS

### 1. *The Defrauding of CIS*

A total of eleven checks are at issue. Seven of the eleven are fraudulently written checks by Rivera, Reyes, and Fuentes. The criminal conviction of said defendants was based on these seven checks. The remaining four other checks were not included in the criminal case. Consequently, the Court shall take a tridimensional approach, discussing first the facts surrounding the seven checks of the criminal conviction, then the facts concerning the remaining four checks, and finally applying both sets of facts to the relevant case law.

a. *No genuine issue of material fact surrounding the seven fraudulent checks involved in the criminal convictions of Rivera and Fuentes*

■ Codefendants Rivera and Fuentes are collaterally estopped from relitigating in this action issues of fact and law previously adjudicated in their criminal trial, which resulted in their conviction. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). Plaintiff can introduce the criminal conviction in order to establish the facts and law upon which the conviction was based. *Id.* Because in their plea agreements codefendants Rivera and Fuentes agreed to make restitution to CIS, the conviction of defendants precludes defendants from denying any essential allegations of the crime in a subsequent civil proceeding brought by the victim. 18 U.S.C. § 3664(e) (1984).

■ Four factors must be present in order to invoke collateral estoppel in this action. First, the issues presented must be the same as those presented in the previous proceeding. Second, the issues must have been actually litigated in the prior action. Third, the issues in the previous litigation must have been necessary to the judgment in that suit. And fourth, the defendants in the prior action must have had a full and fair opportunity to litigate the issues. *Hart v. Yamaha–Parts Distribs.*, 787 F.2d 1468, 1473 (11th Cir.1986).

■ The four factors necessary for collateral estoppel are present in this case concerning the seven fraudulently written checks contained in Rivera's and Fuentes' criminal conviction. First, the criminal indictment and the amended version of the

facts describe the identical events to those presented in this Fraudulent Transaction Loss action. The total amount stolen from CIS through the seven fraudulent checks is $1,401,000. *See,* Plaintiff's Exhibits B, C, D, E, F, G, and H. In their plea letters, Rivera and Fuentes agreed to this version of the facts. Codefendants and others have identified the seven checks at issue in this case as constituting the stolen monies from CIS. In fact, codefendants in their plea letters agreed to make restitution to CIS for these stolen monies.

Second, these issues were crucial to the criminal convictions. The issue of the seven fraudulently submitted, processed and paid checks were the basis for the criminal proceedings against Rivera and Fuentes. Third, the issue of the scheme of processing false insurance claims in order to steal monies from CIS was necessary to the prior criminal suit. In fact, it was the basis of the mail fraud conviction.

■ And fourth, Rivera and Fuentes had a full and fair opportunity to litigate this issue during their criminal case. Defendants' guilty pleas can establish defendants' liability through collateral estoppel in a subsequent civil proceeding. *State Farm Mutual Insurance Company v. Rosenfield,* 683 F.Supp. 106, 108 (E.D.Pa.1988). Rather than attempting to prove their innocence in the criminal trial, Rivera and Fuentes chose to plea guilty. By pleading guilty, codefendants Rivera and Reyes received the dismissal of several charges against them. Consequently, even though there was no actual litigation of the criminal charges, the decision to plea guilty is sufficient to satisfy the requirement of a full and fair opportunity to litigate the issue of the seven fraudulent checks.

Therefore, because all the prerequisites for collateral estoppel are met, Rivera and Fuentes are estopped from relitigating or denying the facts concerning the fraudulent seven checks.

b. *No genuine issue of material fact concerning the four remaining checks*

The undisputed facts show that there is no genuine issue of law concerning the defraud-ing of CIS through the processing and issuing of the four other checks. Plaintiff's Exhibits I and A. Two of the four checks, totalling $25,000.00, were payable to Fuentes for fraudulent payment of attorney's fees. Reyes has admitted to his own guilt and that of Rivera, Fuentes, and Gamalier Reyes in the scheme to defraud CIS. *See,* Sworn Statement of Reyes, Plaintiff's Tab 8. In his statement, Reyes admitted that he and Rivera, Fuentes, and Gamalier Reyes submitted fraudulent insurance claims in order to steal monies from CIS. *Id.*

The final two checks, payable to the Market Adjustment Bureau, were deposited by Rivera and Reyes in a Chicago CIS bank account. Reyes and Rivera then withdrew two checks in the total amount of $70,000.00. These checks were payable to themselves and not to CIS. In fact, Rivera instructed that the Bureau checks not be properly recorded in the CIS ledger. Although defendant Rivera disputes any illegitimate reason for his receipt of the $35,000, he does not provide anything more than his mere conclusory allegations. In refuting plaintiff's argument, Rivera does not provide affidavits or depositions that controvert the substantiated allegations of fact provided by plaintiff. Therefore, this Court finds plaintiff's version of the facts as to the Bureau checks to be undisputed.

The above facts prove that Reyes, Rivera, Fuentes, and Gamalier Reyes issued, processed and paid fraudulent CIS checks. The next question to be resolved is whether these facts constitute violations of civil RICO, conversion, unjust enrichment, fraud and breach of fiduciary duty.

c. *The fraudulent transaction loss, composed of all eleven checks, constitutes a violation of civil RICO*

■ The issuing and processing of the checks constitute a violation of the civil RICO statute. In order to prove a violation of civil RICO, plaintiff must prove: (1) that there existed an enterprise, which affected interstate commerce; (2) that codefendants were employed by or associated with the enterprise; (3) that codefendants participated in the conduct of the enterprise's affairs; and (4) that codefendants' participation was

through a pattern of racketeering activity. *State Farm Mutual Automobile Ins. Co. v. Rosenfield,* 683 F.Supp. 106, 108 (E.D.Pa. 1988); 18 U.S.C. § 1962(c) (1984).

Rivera, Fuentes and Gamalier Reyes violated the civil RICO law. An enterprise exists when a group of persons associate together in order to engage in a course of criminal conduct. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Reyes admitted that he, Rivera, and Santiago along with Fuentes and Gamalier Reyes composed an ongoing organization with a structure and a common purpose. Additionally, the fraudulent issuing and processing of all eleven checks affected interstate commerce: the stolen monies were sent through the United States mail system. *See,* Sworn Statement of Reyes, Tab 8 at 52. Furthermore, Reyes admitted in his sworn testimony that he signed the fraudulent checks, and Rivera created the system by which the claim checks were processed and issued without detection. Therefore, Rivera, Fuentes, and Gamalier Reyes constituted an enterprise.

Codefendants' participation in the enterprise constituted a pattern of racketeering. The "pattern of racketeering activity" consists of a requisite number of criminal acts performed by the persons composing the enterprise. *Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528. A pattern requires at least two criminal activities within ten years. 18 U.S.C. § 1961(5) (1984). In addition, the racketeering predicates must be related and amount to or pose a continued threat of criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Mail fraud constitutes "racketeering activity." 18 U.S.C. §§ 1341 and 1961(1)(B) (1984). Rivera, Fuentes and Gamalier Reyes used the United States Postal Service numerous times within two years in order to embezzle the funds from CIS. The predicates, which were frequently repeated during the two year period, were performed by the same participants and related through the common purpose of defrauding CIS. Therefore, the criminal conduct of Rivera, Fuentes,

and Gamalier Reyes satisfies the fourth requirement of civil RICO.

Because the criminal activity performed by Rivera, Fuentes, and Gamalier Reyes satisfies all four elements of civil RICO, the Court finds that said codefendants are liable under civil RICO. Accordingly, the Court sees no need in proceeding further to consider the common law claims of conversion, unjust enrichment, breach of fiduciary duty, and fraud as to Rivera, Fuentes, and Gamalier Reyes.

#### d. *Liability of Rivera, Fuentes, and Gamalier Reyes*

Based on the foregoing discussion, plaintiff is entitled to summary judgment as to both liability and damages connected with the fraudulent transaction claim against Rivera, Fuentes, and Gamalier Reyes. The total value of the monies stolen through the eleven checks equals $1,496,000.00 plus interest from the date of each check paid. Under 18 U.S.C. § 1964(c) (1984), plaintiff is entitled to receive treble damages plus the cost of the suit, including reasonable attorney's fees. Plaintiff is also entitled to the discharge of its $100,000.00 bond, and any accrued interest. Furthermore, Rivera, Fuentes, and Gamalier Reyes, as participants in this violation of civil RICO, are jointly and severally liable for all damages resulting from this conspiracy. *Fleischhauer v. Feltner,* 879 F.2d 1290, 1301 (6th Cir.1989) *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990).

#### 2. *Codefendant Torres Received Unjust Enrichment*

Because Torres and Rivera signed a pre-nuptial agreement precluding the formation of a conjugal partnership, plaintiff's summary judgment motion against said conjugal partnership is hereby denied. *See,* Article 1267 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3551; *see also, Umpierre v. Torres Díaz,* 114 D.P.R. 449, 461 (1983); *Vilariño Martínez v. Registrar,* 88 P.R.R. 279, 283 (1963). Accordingly, the Court dismisses *sua sponte* the complaint as to the alleged conjugal partnership between Ana Delia Merced Torres and Morgan Rivera Perez. Plaintiff's summary judgment motion as to Torres, however, is granted for the reasons discussed below.

■ Torres received stolen CIS monies through her husband Rivera. All together, Torres received $150,000 in stolen monies. She invested $100,000 of these monies into a certificate of deposit at First Federal Savings Bank. It is an established principle of law that one may not unjustly enrich oneself at the expense of another. *Silva v. Indus. Comm'n*, 91 P.R.R. 865, 871 (1965). Of the stolen funds, Torres has delivered $85,000.00 to the U.S. Marshall. It is irrelevant to Torres' liability that Torres and Rivera precluded the formation of a conjugal partnership through a pre-nuptial agreement. The undisputed facts are that she received a total of $150,000 of stolen funds from CIS and this constitutes unjust enrichment.

■ Therefore, plaintiff is entitled to judgment as a matter of law against Torres in the sum of $150,000.00. "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Republic of Philippines v. Marcos*, 806 F.2d 344, 355 (2d.Cir.1986) (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919)), *cert. denied* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987). The imposition of a constructive trust is the appropriate remedy for unjust enrichment, therefore, because it protects the true property owner's interest. *Marcos*, 806 F.2d at 355; *MDO Dev't v. Kelly*, 726 F.Supp. 79, 85 (S.D.N.Y.1989). Puerto Rico also recognizes the creation of constructive trusts. *See*, 31 L.P.R.A. 2543; *Ruiz v. Ruiz*, 61 P.R.R. 794 (1943); *Ramirez v. Ramirez*, 65 P.R.R. 510 (1946). Accordingly, the Court orders an imposition of a constructive trust against these CIS stolen monies.

### B. *THE UNAUTHORIZED COMPENSATION LOSS*

■ Plaintiff alleges Rivera received excess compensation in the amount of $267,-476.17. Although Rivera admits to receiving this money, he states that the monies were lawful, authorized bonuses. The only evidence concerning bonuses proffered by Rivera indicates that effective December 1990, Rivera would receive a base salary equal to 72% of his total salary, and bonuses equal to 20% of his total salary. In 1991, Rivera received $87,600.00 in base salary, thereby entitling him to receive only $24,333.33 in lawful bonuses. The evidence shows, however, that Rivera received a total of $162,320.00 in excess compensation. Plaintiff's Tab 5. By subtracting the amount of bonuses from the amount of excess compensation, the Court finds that Rivera received $137,986.67 in unauthorized compensation for the 1991 year. Accordingly, this Court grants plaintiff's motion for summary judgment as to the unauthorized compensation claim for 1991 in the amount of $137,986.67.

■ Concerning this claim as to the years of 1989, 1990, and 1992, there is no evidence as to the amount of lawful bonuses Rivera received.[5] Therefore, because the parties dispute whether or not the "excess amount taken" in Plaintiff's Tab 5 chart consists entirely or partly of lawful bonuses, this Court denies plaintiff's motion on the unauthorized compensation loss claim against Rivera as to these three years.

### CONCLUSION

Concerning the Fraudulent Transaction claim, the Court grants CIS' summary judgment motion against Rivera, Fuentes, Gamalier Reyes, and Torres; however, the Court denies plaintiff's motion on said claim against the conjugal partnership between Torres and Rivera. Concerning the Unauthorized Compensation claim, the Court grants in part and denies in part CIS' motion for summary judgment against Rivera. As stated earlier, because these proceedings are stayed as to Tropi–Car, Reyes, and the conjugal partnership constituted between Reyes and Marcano, this Court is precluded from ruling on

---

5. It is clear that in 1992, Rivera's base salary decreased from the $87,600 amount calculated in the November 29, 1990 letter to $29,200. *See*, Plaintiff's Tab 5. There is no evidence that the amount of Rivera's bonuses continued to equal 20% of his total salary. Therefore, this Court cannot conclude that the amount of his lawful bonuses would continue to correspond with the November 1990 letter since his salary did not.

this motion anent said defendants. Plaintiff is entitled to attorneys fees on the civil RICO claim pursuant to 18 U.S.C. § 1964(c) (1984). Accordingly, plaintiff is to file with the Court a verified fee application no later than March 15, 1994. Judgment shall be entered accordingly.

IT IS SO ORDERED.