**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George HOUSE, Jr.,
Defendant-Appellant.**

No. 86–1120.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1986.
Decided Oct. 29, 1986.

R. Thomas Day, Asst. Fed. Pub. Defender, St. Louis, Mo., for defendant-appellant.

Frederick J. Hess, U.S. Atty., Laura J. Jones, Asst. U.S. Atty., East St. Louis, Il., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

While serving a federal sentence that does not expire until 2005, to be followed by 30 years' imprisonment in Mississippi, George House stabbed to death Jack Callison, a fellow prisoner. He pleaded guilty to manslaughter, see 18 U.S.C. § 1112, under a plea bargain. The government dropped a murder charge and promised to recommend that the judge sentence House to ten years' imprisonment, consecutive to his existing sentence. The court accepted the prosecutor's recommendation but added $1,303.61 in restitution to compensate the government for Callison's autopsy, funeral, and burial. See 18 U.S.C. § 3579(b)(3). House did not appeal. He later filed a motion under Fed.R.Crim.P. 35, contending that the sentence violated the terms of the plea bargain and that the order of restitution is otherwise inappropriate. The district court denied this motion, and House's appeal places the issues before us.

The district judge sentenced House on June 26, 1985, the Rule 35 motion was filed on October 16, 1985, and the district court denied the motion on January 10, 1986. The denial came 198 days after the date of judgment. Until recently a motion to reduce sentence under Rule 35(b) had to be acted on within 120 days. The time limit was jurisdictional. *United States v. Kimberlin*, 776 F.2d 1344 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Gaertner v. United States*, 763 F.2d 787 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 535, 88 L.Ed.2d 466 (1985). The Rule was amended effective August 1, 1985, to require that the motion

be filed within 120 days (House's was filed on the 112th day), and if the motion is timely filed: "The court shall determine the motion within a reasonable time." The court in this case denied the motion 86 days after it was filed. If the Rule continues to state a "jurisdictional" limit, we must decide whether 86 days is a "reasonable time" even though no party has raised the issue. We conclude, however, that the version of Rule 35(b) now in effect does not state a jurisdictional limit for the court's decision. Only the time within which to file is "jurisdictional." See *Haase v. United States*, 800 F.2d 123, 129 (7th Cir.1986); *United States v. Parrish*, 796 F.2d 920 (7th Cir.1986).

The notes of the Advisory Committee accompanying the amendment indicate that the change was designed to avoid characterizations of the limitation as jurisdictional. The time limit is designed principally to prevent the district court from deferring action in order to be able to revise sentences in light of parole decisions, as the discussions in *Gaertner* and *Kimberlin* show. If the government is not concerned about the time the district court takes, an appellate court should not be concerned either. So we proceed to the merits without deciding whether an action 198 days after sentencing and 86 days after the filing of the motion is within a "reasonable time".

House's principal argument is that the district court did not comply with 18 U.S.C. § 3580(a), which requires a court to "consider the amount of the loss sustained by any victim as a result of the offense [and] the financial resources of the defendant" in deciding whether to award restitution. The slaying saved the government money, House insists; $1,303 is peanuts compared with the cost of feeding and housing Callison even for a month. Although chutzpah sometimes pays off, House cannot escape so easily. Section 3580(a) is not the source of the authority to award restitution. Section 3579(b)(3) provides that if an offense results in death, the court may award as restitution "an amount equal to the cost of necessary funeral and related services". This does not depend on net loss.

The computation should not be complicated by possible offsets. The murderer might as well say that because his victim would have died of natural causes if not by violence, he did not "cause" funeral expenses to be incurred. Death by stabbing is murder notwithstanding the inevitable mortality of the victim; so too the funeral expenses caused by murder are current losses notwithstanding offsets. The policy of the United States was that Callison should live; the expenses of keeping him alive served a public purpose (as well as Callison's own purposes). House accelerated Callison's death and may be taxed the ensuing expenses.

■ House is indigent, but this does not preclude an award of restitution. *United States v. Fountain*, 768 F.2d 790, 802–03 (7th Cir.), *modified on other grounds*, 777 F.2d 345 (1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986). He has some funds in a prison commissary account, which may be reached. He does not earn money now—few inmates have jobs at Marion, where House is confined— but he may be moved eventually to another prison where more inmates work for pay. As *Fountain* observed, the public's fascination with the handiwork of multiple murderers sometimes allows them to collect royalties for allowing journalists to write their life stories. The restitution order ensures that the government stands first in line for the proceeds. House has no dependents, and although he raised his poverty at sentencing as an argument against restitution he did not ask the judge at sentencing for more time to present evidence. The sentencing consequently was procedurally regular. The judge need not consider expressly factors that the defendant does not bring to his attention.

The principal effect of the restitution order is to block disbursements from House's commissary account. Marion furnishes food, clothing, cigarettes, soap, paper, and stamps to inmates. The commissary will sell inmates chocolate, potato chips, running shoes, and other personal items. House wants his chocolate and cannot get it as a result of the order of restitution. This is hardly a reason to vacate the order, however. An inmate who craves chocolate would do well to avoid mayhem. It turns out that the denial of snacks is the real punishment for the crime. Although the ten-year sentence is consecutive, it does not postpone the date on which House will become eligible for parole, see *Fountain*, 768 F.2d at 799, and if he is paroled he will start serving a long sentence in state prison. As a realistic matter, he lost nothing except his commissary account for having killed Callison. One may doubt whether deprivation of potato chips is an appropriate maximum punishment for manslaughter, but it was the only one available to the sentencing court.

House insists, however, that the judge erred in entering an order unlimited in duration. The judgment simply requires him to pay and does not set any outer limit. He relies on 18 U.S.C. § 3579(f), which provides:

(1) The court may require that such defendant make restitution ... within a specified period or in specified installments.

(2) The end of such period or the last such installment shall not be later than—

(A) the end of the period of probation, if probation is ordered;

(B) five years after the end of the term of imprisonment imposed, if the court does not order probation; and

(C) five years after the date of sentencing in any other case.

(3) If not otherwise provided by the court under this subsection, restitution shall be made immediately.

The government has confessed error on this point, suggesting that we remand to allow the district court to limit the duration of the obligation to pay restitution. The judgment of the district court is to be enforced, however, unless the court erred; the government's belief that the court erred is not dispositive. We must determine whether the government has accurately construed § 3579(f). *Rinaldi v. United States*, 434 U.S. 22, 23, 98 S.Ct. 81, 82, 54 L.Ed.2d 207 (1977).

Section 3579(f)(3) makes restitution due immediately, like an ordinary debt. Section 3579(f)(1) allows the sentencing court to depart from that rule and to establish a payment schedule—payment "within a specified period or in specified installments." Section 3579(f)(2) says that "[t]he end of such period or the last such installment" shall come within a specified time. The reference—"such period" or "such installment"—is to the periods and installments established under § 3579(f)(1). Unless there is such a period or installment, § 3579(f)(2) is inapplicable. So when an order to pay restitution does not establish a period or set a schedule of installments, it also is not limited in time.

This makes perfect sense. Restitution is a debt, which may be collected using the means appropriate to other debts. 18 U.S.C. § 3579(h). Debts do not abate after five years. Some debts, such as those established by criminal fines, even survive bankruptcy. (The Supreme Court will decide this Term whether an obligation to pay restitution may be discharged in bankruptcy. See *Kelly v. Robinson*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986), granting cert. to review 776 F.2d 30 (2d Cir.1985).) The power of a district judge to establish a schedule of repayment under § 3579(f)(1) created a risk that the schedule would be so extended as to make the order ineffectual. A defendant told to pay in 40 years has been told he can keep the money. So § 3579(f)(2) limits the use of § 3579(f)(1) to drag out the process of restitution. Such a limit is unnecessary when payment is due immediately under § 3579(f)(3).

So far as we can tell, only one other court has considered whether § 3579(f) imposes a limit on the effectiveness of an order to make restitution when the judge does not establish a payment schedule. See *United States v. Keith*, 754 F.2d 1388, 1393 (9th Cir.) ("The district court apparently mistakenly assumed that subsection 3579(f)(2)(B) defines the period for payment of restitution ordered under the Act. It does not. It merely defines the maximum period that may be specified.") (note omitted), *cert. denied*, —— U.S. ——, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985). The statute origi-

nated in the Senate, but the language that became § 3579(f) was added by the House. The House considered the amended bill without the benefit of a report from any committee. There are a few Delphic statements on the floor, none of which is useful. For example, Rep. McCollum stated that the new language "deals with the time within which restitution must be made.", 182 Cong.Rec. H8206 (daily ed. Sept. 30, 1982), which repeats the obvious without clarifying anything. But the dearth of legislative history is unimportant. There is no uncertainty in the language or structure of § 3579(f).

Our opinion in *Fountain* contains a throwaway line that was the basis for the government's confession of error: "The statute limits the period within which restitution is due; so far as relevant to this case, the outer limit is five years after the defendant is released from prison. See 18 U.S.C. § 3579(f)(2)(B)." 768 F.2d at 803. The opinion in *Fountain* does not recite that the district judge had established a schedule of repayments under § 3579(f)(1), which led both House and the government to conclude that the termination rule of § 3579(f)(2) does not depend on such an order. But the remarks in *Fountain* are dicta. The defendants had not contended that the orders to make restitution were defective for lack of a termination date; the parties did not join issue; the dispute about restitution before the court was whether the sentence should have contained any order at all; the court's disposition was based on unrelated considerations. A statement of this character that describes a statute without purporting to resolve a disputed question is not binding when the question finally arrives for decision. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 459–62, 98 S.Ct. 2441, 2449–51, 57 L.Ed.2d 337 (1978). *Fountain* therefore does not prevent us from agreeing with *Keith*, as we do, that § 3579(f)(2) protects the victim, not the offender. It limits the duration of a grace period established under § 3579(f)(1) and does not terminate the obligation to make restitution. (*Keith* modified the order at hand to impose a five-year period. We do not read

this as holding that a district court *must* exercise this power under § 3579(f)(1), and there is no basis for requiring it to do so in this case.)

■ The remaining contentions in this case do not require much discussion. House contends that the district court should have informed him of the possibility of restitution before accepting his plea. He did not present this claim to the district court, however, and it is too late now. The order of restitution also does not violate the terms of the plea bargain. The bargain was that the prosecutor would reduce the charge to manslaughter and recommend ten years' imprisonment; he did so. The district judge raised the question of restitution on his own. The parties did not strike a bargain under Fed.R.Crim.P. 11(e)(1)(C) fixing the complete terms of the sentence; they bargained for a recommendation by the prosecutor. House got what he bargained for and cannot complain that the prosecutor addressed the subject of restitution once the court raised the issue. See *Brooks v. United States,* 708 F.2d 1280 (7th Cir.1983).

AFFIRMED