UNITED STATES of America, Appellee,

v.

Brian BERARDINI, Defendant–Appellant.

No. 946, Docket 96–1421.

United States Court of Appeals,
Second Circuit.

Argued Jan. 21, 1997.

Decided April 30, 1997.

Anthony M. Bruce, Assistant United States. Attorney, Buffalo, NY (Patrick H. NeMoyer, United States Attorney for the Western District of New York, Buffalo, NY, on the brief), for Appellee.

Robert M. Goldstein, Buffalo, NY, for Defendant–Appellant.

Before: KEARSE and JACOBS, Circuit Judges, and GLEESON, District Judge *.

KEARSE, Circuit Judge:

Defendant Brian Berardini appeals from a judgment entered in the United States District Court for the Western District of New York following his plea of guilty before William M. Skretny, *Judge*, convicting him of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 371 and 1343 (1994). Berardini was sentenced principally to five months' imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay $39,271 in restitution to 62 individuals. On appeal, he contends principally that the district court erred in ordering restitution of more than $11,791, which was the amount lost by the 20 victims who had been located by the government. Although the district court may be required to take action at future times to resolve problems with respect to victims who at those times remain unlocated, we affirm the judgment as it now stands.

## I. BACKGROUND

In June 1995, Berardini and 28 others were charged in an 89–count indictment with

---

* Honorable John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation.

conducting a massive fraudulent telemarketing conspiracy. The government produced evidence that the losses to the conspiracy victims totaled some $27 million. In February 1996, Berardini pleaded guilty to participating in the conspiracy from 1992 to 1993. He acknowledges that during that period he grossed approximately $39,271 in sales to customers he called. In his plea agreement, Berardini acknowledged that he "made at least 68 sales knowing that the pitches he used to obtain each sale were, at times, false, and at other times, misleading" (Plea Agreement at 4), and that the court "may require that restitution of approximately $39,271 be paid" (*id.* at 2).

At Berardini's sentencing hearing, the government stated that it had been able to locate the persons to whom Berardini made sales totaling $11,791 and that it "kn[e]w the names, addresses, et cetera, of every one of the victims that went into the thirty-nine thousand some odd dollar figure through the FBI data bases." (Sentencing Transcript, May 7, 1996 ("Tr."), 15.) The government stated that although it had been able to locate the victims whose losses totaled $11,-791, "[t]he others ... are many elderly victims," and "[m]any of those people died, gone [*sic* ] into nursing homes, and things of that nature and simply can't be located at this point." (*Id.*)

After sentencing Berardini to five months' imprisonment, to be followed by three years of supervised release, and declining to require payment of a fine, the district court stated as follows with respect to restitution:

I am going to direct that restitution be paid in the amount of thirty-nine thousand two hundred seventy-one dollars. That's due immediately. The execution of that requirement, that amount and that judgment is stayed. I'm going to set monthly installments over the three-year period of supervised release of three hundred dollars that you are to pay, and that will be worked out with you by probation, and that those monies that are paid be made available to the identifiable victims that are identified in the report in this particular case....

(Tr.19.) Although the oral sentence itself did not specify the duration of the stay with respect to so much of the $39,271 as would exceed the $300 in monthly payments, the written judgment of conviction dated May 7, 1996 ("Judgment"), states that the total must be paid at least three months before the end of Berardini's three-year term of supervised release. The Judgment orders Berardini to

make restitution to Victims in the amount of $39,271. The defendant shall make timely installments on a schedule to be fixed by the U.S. Bureau of Prisons while incarcerated and at the rate of $300 per month while on supervised release. Full payment of the restitution is due at least three months prior to the expiration of supervision.

Judgment at 3 (emphasis in original). The Judgment lists by name the 20 persons to whom restitution in specified amounts, totaling $11,791, must be made, and it provides that the "[p]ayments of restitution are to be made to ... the payee(s)," rather than to the United States Attorney. *Id.* at 4.

Berardini appealed, contending, *inter alia*, that the proper amount of restitution is $11,-791. This Court, noting that the Judgment (a) did not list the 42 victims to whom restitution of the remaining $27,480 (*i.e.*, the difference between $39,271 and $11,791) was to be made, and (b) did not make clear what obligation, if any, the court imposed on Berardini in the event that the government does not succeed in locating any or all of those remaining victims prior to the expiration of Berardini's term of supervised release, remanded by summary order to the district court for clarification.

In a Statement, With Memorandum as Supplementation of the Record, in Clarification of the Sentence of Restitution, dated February 14, 1997 ("District Court Clarification"), the district court stated, *inter alia*, that, as provided in the oral sentence and the Judgment, Berardini is to pay the full $39,-271 in restitution, and that it is the court's hope that some or all of those identified victims who have not yet been located will come forward to claim the restitutionary payments to which they are entitled.

The court indicated that it had imposed the restitution order for $39,271 in the wake of the representation that the government had the names and addresses of all of the victims whose losses totaled that sum, and that on remand, the Assistant United States Attorney had candidly conceded that "the government does *not* in fact have the addresses of the victims owed the balance of the restitution above the $11,791." District Court Clarification at 3 (emphasis in original). The court expressed the expectation that the government would file a lien with respect to the remaining $27,480:

> [A]ll of those victims have been identified. The amount of sales for which Mr. Berardini is responsible was known, since he has not objected to the total amount as stated in the presentence report. The only gap is in finding those victims who are identified but unlocated, and who are owed $27,480.
>
> When I sentenced Mr. Berardini, I required him to pay the full restitution of $39,271. To clarify the specifics of the restitution payment schedule, the twenty victims whose names and addresses are included in the presentence report will be paid their restitution first. That restitution will equal $11,791, as the presentence report indicates. Further, my ruling on restitution stands insofar as the Defendant will be obligated to pay $300 per month for the three years of his supervised release. He will therefore pay $10,800 to the identified and located victims during his supervised release. Mr. Berardini will then be responsible for the remaining $991 owed to the identified and located victims, plus the $27,480 payable to the sixty-two [*sic*] identified but *unlocated* victims.
>
> It was and still is this Court's understanding that the government's procedure after a restitution order is imposed is to file a lien on behalf of the United States for the amount owed.... This lien remains in place for twenty years, so this Court is informed, or until the balance of the restitution owed is satisfied, remitted, set aside, or terminated. While this Court and the Probation Officer will lose the ability to monitor Mr. Berardini's compliance with the restitution order after the end of his supervised release, the lien will

allow victims to come forward and claim what is rightfully theirs. Mr. Berardini can, in the meantime, make his payments on the balance of the restitution for such eventuality to the appropriately designated fund which is maintained by the Clerk of the Court.

*Id.* at 3–4 (emphasis in original) (footnotes omitted).

## II. DISCUSSION

On appeal, Berardini contends principally that the district court erred in ordering restitution of more than the $11,791 lost by the 20 victims who have been located by the government. In a letter brief submitted following the District Court Clarification, Berardini concedes that "[t]here is no question that the government will be able to file a lien on behalf of the victim(s) to whom this money is owed." (Berardini letter brief at 4.) But he argues that since the government itself was not a victim of the offense and hence is not entitled to restitutionary payment in its own behalf, and since there is little likelihood that all of Berardini's victims, who have not been located since 1992–1993, will be found in the future, "[t]he question then arises, to whom does the Appellant pay the balance of $27,-480.00 of restitution owed in order to discharge his obligation, if the District Court's Restitution Order is allowed to stand." (*Id.*) Though this question is not without substance, we conclude that the district court will appropriately be able to answer it if and when the problem arises.

### A. *The Order of Restitution to Identified but Unlocated Victims*

 A sentencing court's order of restitution is reviewed for abuse of discretion. *See, e.g., United States v. Soto,* 47 F.3d 546, 550 (2d Cir.1995); *United States v. Lavin,* 27 F.3d 40, 42 (2d Cir.) (per curiam), *cert. denied,* 513 U.S. 976, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994). Given Berardini's acknowledgement that he grossed $39,271 in the unlawful scheme, and given the identification of the 62 victims whose losses totaled that sum, we see no theoretical error or abuse of discretion in the district court's

ordering restitution in that amount to the identified victims. The problem that may arise is a practical one when restitution is to be made to victims who, though identified, cannot be located. We believe the provisions of the 1994 Criminal Code applicable to Berardini, *see* 18 U.S.C. § 3583(e) (1994); *id.* §§ 3663(h)(1) and (2) (1994) (current versions at *id.* §§ 3613(f) (1996) and 3664(m)(1)(B) (1996), respectively, *see* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132 ("AEDPA") §§ 207(c)(3), 206(a), 110 Stat. 1214, 1239, 1235); and 18 U.S.C. § 3613(a) (1994) (current version at *id.* § 3613(c) (1996), *see* AEDPA § 207(c)(3), 110 Stat. 1214, 1239), provide the court with the authority needed to resolve this problem.

■ Preliminarily, we note that although there is some suggestion in the District Court Clarification that Berardini might make restitutionary payments to the Clerk of the Court for some 20 years, no such requirement was authorized by the Code or imposed in the sentence. The applicable version of § 3663(f) provided that when an order required restitution within a specified period or in specified installments, "[t]he end of such period or the last such installment shall not be later than ... five years after the end of the term of imprisonment imposed." 18 U.S.C. § 3663(f)(2) (1994) (*repealed by* AEDPA § 205(a)(2), 110 Stat. 1214, 1230; *see* 18 U.S.C. § 3572(d)(2) (1996), AEDPA § 207(b), 110 Stat. 1214, 1236–37). The sentence in this case does not violate that provision because the oral sentence, which made the $39,271 payment due immediately and stayed that requirement without specifying the duration of the stay with respect to the balance due in excess of the monthly payments, was supplemented by the written Judgment, which specifies that the $39,271 total is to be paid at least three months prior to the expiration of Berardini's three-year term of supervised release. Thus, the oral sentence and the Judgment together make clear that, in addition to the payments of $300 per month during the term of supervised release, Berardini will be required to make a "balloon" payment so that by three months prior to the expiration of that term, he will have paid a total of $39,271. Although, as discussed below, Berardini's assets may remain

vulnerable to civil attachment, there is no requirement in the sentence that he make payments after the end of his supervised-release period.

The practical problem raised by Berardini will first present itself at the point that the balloon payment is due, if not all of the victims to whom the $27,480 is owed have then been located. The problem would arise because the Judgment orders that the restitutionary payments be made to the victims, rather than to the government on behalf of the victims. Accordingly, unless all of the presently unlocated identified victims turned up by that time, it would be impossible for Berardini to comply with the combination of conditions imposed by the district court. In that event, either party may seek a ruling from the court as to whether and how the balloon-payment requirement of the judgment is to be complied with.

In response to such an application, which we assume would be made prior to the due date of the balloon payment, and hence prior to the end of the supervised-release period, the court could exercise its authority under 18 U.S.C. § 3583(e) to modify the terms of supervised release. Under that section, after consideration of the pertinent sentencing factors, the court could, for example, terminate Berardini's supervised release and remit his obligation to make further restitution. *See id.* § 3583(e)(1) (court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release"). Alternatively, the court could "modify ... the conditions of supervised release." *Id.* § 3583(e)(2). Under this provision, for example, if the court learns that a given victim is deceased, it could order that the restitution be made to the victim's estate. *See id.* § 3663(c) (1994) (current version at *id.* § 3663(a)(1)(A) (1996), *see* AEDPA § 205(a)(1), 110 Stat. 1214, 1229). Or it could order that Berardini make his balloon payment to the government as trustee for the as-yet-unlocated victims. Ordering that the payment be made to the government as trustee would not increase Berardini's punishment; it would merely introduce an inter-

mediary to which Berardini is required to make the already scheduled payment.

Assuming that the court orders Berardini to make the balloon payment to the government as trustee for the as-yet-unlocated victims, various sequences might follow. First, if Berardini does not make the entire required balloon payment to the government, he will not have complied with the conditions of his supervised release, and the government may move the court to punish him. Regardless of how the court might rule on such an application, the victims who are entitled to restitution would, unless the court orders otherwise, retain their rights to be paid. Section 3663 provides that a restitution order may be enforced "by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h)(2) (1994). An unpaid money judgment in a civil action remains in effect for 20 years. *See* N.Y.C.P.L.R. 211(b) (McKinney 1990) ("money judgment is presumed to be paid and satisfied after the expiration of twenty years from the time when the party recovering it was first entitled to enforce it"); *see also* Fed.R.Civ.P. 69(a) (federal judgments to be enforced in accordance with the practice and procedures of the state in which the district court sits). Further, as Berardini concedes, the government may file a lien on behalf of the victims to secure Berardini's obligation to make restitution. *See* 18 U.S.C. § 3663(h)(1) (1994) (an order of restitution may be enforced by the government "in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title [*i.e.*, 18 U.S.C. §§ 3611–3615]"); *id.* § 3613 (1994) (a fine is a lien in favor of the United States, which continues until the liability is "satisfied, remitted, or set aside," *id.* § 3613(a) (1994), or until it becomes unenforceable by the passage of 20 years from the date of the judgment or by the death of the defendant, *see id.* § 3613(b) (1994)). We assume that the government has filed, or will file, a lien on behalf of the persons entitled to restitution, as it advised the district court is its normal practice, *see* District Court Clarification at 4. Thus, unless sooner satisfied, remitted, or set aside, the lien filed by the government would remain effective until 20

years after the judgment; at the 20-year mark, by operation of law, that lien would become unenforceable. We note that the 20-year period covered by the government's lien may not precisely match the 20-year period during which the victims have the right to enforce the restitution order as a civil judgment, for the former period normally begins upon entry of the judgment of conviction, whereas the latter period begins at the time the victims gain the right to enforce the judgment. Since the balloon payment is not due until three months before the end of the supervised-release period (which presumably began in late 1996), the rights of the 42 as-yet-unlocated victims to collect have not yet ripened.

Second, if Berardini makes the required balloon payment to the government as trustee for the victims, and has made the required monthly payments, the government's lien would properly be extinguished at that point because the restitution debt would have been satisfied. Berardini would be entitled to a declaration to that effect, and any victims who thereafter came forward could obtain their moneys from the government.

Finally, if Berardini makes the balloon payment to the government as trustee, and if all or any portion of that money is not claimed by the victims, the question will arise as to what is to be done with the unclaimed money. Insofar as Berardini might seek to have unclaimed restitutionary payments being held by the government repaid to him at some time during the 20-year period following his payment, it is not clear that the court would have the authority to order such a repayment. Although a lien filed by the government may presumably be remitted by the court at any time prior to the expiration of the 20-year period specified in § 3613(b), *see* 18 U.S.C. § 3613(a) (1994)—(we note that such a lien would, by hypothesis, already have been extinguished because Berardini's debt would have been satisfied)—it may well be that the rights of the victims to seek satisfaction directly by enforcing the restitution order in the manner of "a judgment in a civil action," *id.* § 3663(h)(2) (1994), cannot be so extinguished after the end of Berardini's supervised-release period, for the court's

power under § 3583(e) to reduce or modify the terms of supervised release exists "at any time *prior to the expiration or termination of the term of supervised release.*" 18 U.S.C. § 3583(e)(2) (emphasis added). We leave consideration of this question to the district court in the first instance, if Berardini makes such an application and if the court is inclined to grant it.

If, 20 years after Berardini makes the required balloon payment, any of that money remains unclaimed, the rights of the victims to enforce the restitution order as a civil judgment will then expire. Since the government was not a victim of Berardini's offense and the court expressly refused to impose a fine, there would appear to be no basis for allowing the government to keep the money. And since at that point, if Berardini had *not* made the ordered payments, the vulnerability of his assets to attachment on that account would have ended, we would think the district court would order that any sums unclaimed by his victims be returned to him. Promotion of respect for the law requires that a defendant who has made the required payment not be left worse off for complying with the court's order than he would have been had he disobeyed it.

Berardini complains that it is unfair to leave him in a state of uncertainty by virtue of an order that he make payments to victims who may not ever be found. We see no inappropriate uncertainty. As discussed above, upon application of the parties prior to the expiration of the supervised-release period, if the court orders Berardini to make his payments to the government on the unlocated victims' behalf and Berardini complies with that order, there will be no cloud on his assets, for the lien will have been extinguished by Berardini's satisfaction of the debt; the possibility that there may be money to be returned to Berardini at the end of the pertinent 20–year collection period can hardly be termed a cloud. If Berardini does not make the required balloon payment, the resulting lien and exposure to the possibility of civil enforcement by his victims will be an appropriate consequence of his offense and his failure to comply with the terms of his supervised release.

### B. *Other Contentions*

■ Berardini also contends, *inter alia,* that the government did not present proof of the victims' losses as required by 18 U.S.C. § 2327 (1994) and that the court abused its discretion in failing to make his restitution obligation joint and several with the obligations of his codefendants. His arguments are meritless. The contention that the government failed to produce the affidavits required by § 2327 is irrelevant. Berardini was not sentenced under that section (nor could he be without *Ex Post Facto* problems, since he was indicted for conduct occurring in 1992–1993, and § 2327, which makes restitution mandatory, became effective in 1994). Rather, the district court indicated that it was sentencing Berardini under 18 U.S.C. § 3663, stating explicitly that it was considering the factors set out in § 3664(a). The affidavit procedure set out in § 2327 is not applicable to discretionary orders of restitution under § 3663.

■ Berardini's additional contention that the government "failed to prove by a preponderance of the evidence that restitution is owed to" the unlocated victims, and that "[t]he government must at least be able to come forward and state that they have spoken to an individual and the individual has confirmed that he has been the victim of a fraudulent conspiracy" in order to prove that any unlocated individuals were victimized (Berardini letter brief at 5), is meritless. Berardini pleaded guilty to the charges against him; no challenge has been made to the acceptance of his plea. In his plea agreement, Berardini acknowledged that he "made at least 68 sales knowing that the pitches he used to obtain each sale were, at times, false, and at other times, misleading," and that the court "may require that restitution of approximately $39,271 be paid." Given the court's power to resolve the practical problems that may arise in the future, as discussed in Part II.A. above, we conclude that the court did not abuse its discretion in ordering that a total of $39,271 in restitution be paid to the 62 fraud victims whom the government identified by name.

Finally, in light of the concessions made by Berardini in his plea agreement, along with the government's evidence that the conspiracy of which Berardini was a member caused losses to victims totaling approximately $27 million, we see no abuse of discretion in the court's refusal to make Berardini's restitutionary obligation joint and several with the obligations of his codefendants.

## CONCLUSION

We have considered all of Berardini's contentions on this appeal and, for the foregoing reasons, have found in them no basis for reversal. The judgment of the district court is affirmed.