**UNITED STATES of America, Plaintiff,**

v.

**Steven M. ROSTOFF and David R. Rostoff, Defendants.**

**Civil Action Nos. 96–10558–WGY, 96–10559–PBS.**

United States District Court, D. Massachusetts.

Jan. 13, 1997.

---

Christopher Alberto, United States Attorney's Office, Boston, MA, for the U.S.

Michael J. Traft, Carney & Bassil, Boston, MA, for Steven M. Rostoff.

## MEMORANDUM AND DECISION

YOUNG, District Judge.

### I. Introduction and Procedural History

On March 15, 1996, the government filed individual suits against two brothers, Steven M. Rostoff and David Rostoff (collectively, "the Rostoffs"), for their failure to pay court-ordered restitution to the Federal Deposit Insurance Corporation (the "FDIC"). *See United States of America v. Steven M. Rostoff,* Civ. Action No. 96–10558–WGY; *United States of America v. David R. Rostoff,* Civ. Action No. 96–10559–PBS.[1] These two suits arise out of judgments previously entered against the Rostoffs on January 29, 1993 by Judge Zobel in an earlier proceeding, *United States v. Steven M. Rostoff,* Crim. No. 92–10006–01–Z, and *United States v. David Rostoff,* Crim. No. 92–10006–02–Z (collectively *"Rostoff I"*), aff'd *United States v. Rostoff,* 53 F.3d 398 (1st Cir.1995). In *Rostoff I,* the brothers Rostoff were found guilty of conspiracy, bank fraud, and making false statements. Judge Zobel sentenced each to 15 months in prison followed by two years of supervised release, and ordered each to pay a special assessment of $3,650.00 immediately, as well as restitution to the FDIC of an amount "not to exceed" $650,000.00.[2] The probationary period for each brother ended on March 31, 1996.

During the Rostoffs' sentencing, Judge Zobel specifically stated that interest on the judgment was to be waived, *United States v. Rostoff,* Crim. No. 92–10006–01–Z, Judgment (Dckt # 324) at 5–6; *United States v. Rostoff,* Crim. No. 92–10006–02–Z, Judgment (Dckt # 322) at 7–8, and dictated that the installments were to be paid according to a schedule "as established by the Chief, U.S. Probation [the "Probation Office"]." *Id.* No fine was imposed because of the Rostoffs' inability to pay. *Id.* Concerning the order of restitution, Judge Zobel stated:

With respect to restitution, I have some difficulty understanding the financial data that have been supplied, and I do believe that the government is correct that I should look at it with a view to the future. I will therefore impose restitution not to exceed $650,000 without interest. I'm sure counsel will explain to the defendants that *if at the end of probation there is no possibility of that being paid, then it will be remitted.*

Trial Transcript, January 29, 1993 at 91 (emphasis added). Furthermore, in her written Statement of Reasons accompanying the judgment, Judge Zobel stated that the court departed from the sentencing guidelines because "the amount of loss substantially overstated the seriousness of the offense as a number of other factors collaborated to cause the loss." *Rostoff,* Crim. No. 92–10006–01–Z, Judgment at 7; *Rostoff,* Crim. No. 92–10006–02–Z, Judgment at 9. This aspect of the judgment was affirmed by the First Circuit on appeal. *See Rostoff,* 53 F.3d at 414.

After paying relatively paltry sums—$7,463.21 from Steven and $8,200.00 from David—amounting to 1.17% and 1.26% of the total respectively—the Rostoffs ceased making payments sometime in early 1996. These lawsuits followed. In June, 1996, Steven Rostoff filed a motion to dismiss the present suit, which was denied from the bench by this Court. The government here moves for summary judgment in an attempt to convert Judge Zobel's criminal restitution order into a civil judgment.

### II. Summary Judgment Standard

The standard for granting summary judgment under Federal Rule of Civil Procedure 56 is stringent. Summary judgment is appropriate only where the moving party can demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"

---

1. As each case raises identical issues of fact and law, this Court, with the parties' consent, consolidated the two cases *sua sponte* at a motion session on October 24, 1996. Local Rule 40.1(f) and (h).

2. The Rostoffs' conviction is the result of a failed foray into the New England condominium market during the mid to late 1980s, in which the Rostoffs coordinated a conspiracy to defraud a local bank of at least $2,000,000. *See Rostoff,* 53 F.3d at 405. For a more thorough exposition of the facts giving rise to this sentence, see the First Circuit's opinion in *Rostoff,* 53 F.3d at 402–04.

that there is "no genuine issue as to any material fact," and that it "is entitled to a judgment as a matter of law." *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1512–13 (1st Cir.1996) (citing *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 2 [1st Cir.1996] ), *see* Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the lack of a genuine, material factual issue. *Wayfield v. Town of Tisbury*, 925 F.Supp. 880, 881 (D.Mass.1996) (citing *Snow v. Harnischfeger Corp.*, 12 F.3d 1154, 1157 [1st Cir.1993], *cert. denied,* 513 U.S. 808, 115 S.Ct. 56, 130 L.Ed.2d 15 [1994] ) (citations omitted). A factual dispute is "genuine" if a reasonable jury could resolve the point in favor of the nonmoving party. *Rodriguez–Pinto v. Tirado–Delgado*, 982 F.2d 34, 38 (1st Cir.1993). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993). Finally, the evidence must be read "in the light most flattering to the nonmovant," and the court should "indulg[e] all reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). According to the Supreme Court's decision in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "at the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

## III. Discussion

The United States brings this action to recover the amount owed the FDIC pursuant to the Federal Debt Collection Procedures Act ("Debt Collection Act"), codified at 28 U.S.C. § 3001 *et seq.,* and the Victim and Witness Protection Act of 1982 ("Victim/Witness Protection Act"), codified at 18 U.S.C. § 3663 *et seq.* The government contends that the Debt Collection Act allows the Unit-ed States to convert a restitution order issued pursuant to the Victim/Witness Protection Act into a civil judgment, since as of August 12, 1996, Steven Rostoff owes the United States unpaid principal of $642,536.79, and David Rostoff owes $641,800.00.[3] The Rostoffs argue that they have fully complied with the terms of Judge Zobel's restitution order; that the language of the Victim/Witness Protection Act excuses them from further liability for monies owed the FDIC; and that, in any event, there is a dispute concerning a material fact—the total amount of restitution owed—since the Rostoffs previously made a *bona fide* offer of complete restitution which was refused. Each issue will be discussed in turn.

### A. Restitution Under the Victim and Witness Protection Act

 It is clear that, having fulfilled their terms of probation—a fact the government does not contest—the Rostoff brothers are free from supervision by the Probation Office. What is at issue here is whether the Rostoffs are free from *any* obligation to pay the restitution ordered by Judge Zobel in *Rostoff I.* The Victim/Witness Protection Act, under which Judge Zobel sentenced the Rostoffs, grants a judge discretion to order restitution to any victim "in addition to ... any other penalty authorized by law" when sentencing a defendant convicted of an offense under title 18.[4] 18 U.S.C. § 3663(a)(1). In addition, at the time of the sentencing, the Victim/Witness Protection Act provided that:

(1) [a court ordering restitution].... may require that such defendant make restitution under this section within a specified period or in specified installments. (2) The end of such period or the last such installment shall not be later than: (A) *the end of the period of probation if probation is ordered....*

18 U.S.C. §§ 3663(f)(1) and (f)(2)(A) (repealed 1996) (emphasis added).[5] At the time

---

**3.** Although both brothers appear at present not to have the funds to pay the entire restitution, the government apparently brings this suit as a preemptive measure should either brother come into money or assets in the future.

**4.** The Rostoffs were convicted of conspiracy, 18 U.S.C. § 371, bank fraud, 18 U.S.C. § 1344, and making false statements, 18 U.S.C. § 1014.

**5.** Congress repealed this section and other sections of the Victim/Witness Protection Act as part

of the sentencing, the Victim/Witness Protection Act provided that orders of restitution are enforceable by the United States "in the same manner as a judgment in a civil action." 18 U.S.C. § 3663(h)(1)(B) (repealed 1996).[6] The Debt Collection Act, discussed below, provides the exclusive civil procedure for United States to collect judgments on debts. *See* 18 U.S.C. § 3001(a)(1).

The Rostoffs' argument in opposition to the government's motion for summary judgment—essentially a reconstituted version of the points raised in their earlier (failed) motion to dismiss—proceeds as follows: since the periods of probation have terminated, Judge Zobel's order of restitution has been fully discharged. Therefore, the Rostoffs claim an exemption from having to satisfy the remainder of the $650,000.00 criminal judgments against them. They also contend—albeit with some justification—that Judge Zobel's restitution order did not require payment of a specific amount, only such amounts as are determined by the Probation Office.[7]

To support this argument, the Rostoffs state that they have made all payments requested of them by the Probation Office, there has never been any motion filed to extend their probation, and there has been no claim that they violated any of the terms of their probation. Memorandum of Law on Defendant's Motion for Summary Judgment and in Opposition to United States' Motion for Summary Judgment ("Defendants' Opposition") at 3. Relying upon the language of 18 U.S.C. § 3663(f)(2)(A) (repealed 1996), *supra*, the brothers maintain that the termi-

nation of the two year period of supervised release ends their obligation to pay restitution, giving the Probation Office "no authority to require [them] to make any restitution payments." *Id.* In their brief, the Rostoffs cite three circuit courts of appeal that have considered the power to enforce a restitution order under the Victim/Witness Protection Act and have uniformly held, consistent with the plain language of the repealed section 3663(f)(2)(A), that a defendant may not be compelled to make payments of restitution beyond the expiration of his probationary term. *See United States v. Diamond,* 969 F.2d 961, 969 (10th Cir.1992); *United States v. Joseph,* 914 F.2d 780, 786 (6th Cir.1990); *United States v. Bruchey,* 810 F.2d 456, 459–60 (4th Cir.1987).

■ This Court respectfully declines to follow this particular interpretation of the now repealed 18 U.S.C. § 3663(f)(2)(A). Section 3663 limits the time period during which the *court,* acting either unilaterally or through its Probation Office, can require a defendant to make restitution payments, not the time period during which a civil suit by a *victim* to enforce a restitution order may be prosecuted. The three cases cited by the Rostoffs, *Bruchey, Joseph* and *Diamond,* all rely on one line of a Seventh Circuit decision, *United States v. Fountain,* 768 F.2d 790 (7th Cir.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986), reasoning which has been criticized in a later opinion of that same circuit as a "throwaway line" and "dicta." *United States v. House,* 808 F.2d

---

of the Anti-terrorism and Effective Death Penalty Act of 1996. *See* Pub.L. 104–132, § 205(a)(2) (1996). This Court recognizes that the amendments to the Victim/Witness Protection Act do not apply to this case because the Rostoffs were convicted prior to the enactment of the 1996 Act. *See* Pub.L. 104–132, § 211, 110 Stat. 1214, 1241 (1996). This Court, however, does find the fact that Congress repealed sections of the Victim/Witness Protection Act instructive in reaching its decision. The 1996 amendments were an attempt to make it easier for the government to enforce orders of restitution. Thus, this Court recognizes a general policy favoring the enforcement of restitution orders.

**6.** Section 3663(h)(1)(B) (repealed 1996) provides, in pertinent part:

An order of restitution may be enforced ... by the United States ... in the same manner as a judgment in a civil action.
*Id.*

**7.** Judge Zobel's order required restitution in an amount "not to exceed $650,000." The amount presently sought by the government is the difference between the maximum restitution amount ($650,000) minus the amount paid to date by the Rostoffs. In their pleadings submitted to this Court, neither party has submitted a copy of the schedule of payments as established by the Chief Probation Officer. Accordingly, this Court does not concern itself with the payment terms established by the Probation Office. *See* Fed.R.Civ.P. 56(c).

508, 511 (7th Cir.1986).[8] The court in *House* held unequivocally that section 3663(f)(2) ought be construed in a fashion that "protects the victim, not the offender." *Id.* (agreeing with the Ninth Circuit's holding in *United States v. Keith,* 754 F.2d 1388, 1393 [9th Cir.], *cert. denied,* 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 [1985] ).

■ This is the correct approach. The Victim/Witness *Protection* Act (emphasis added) was enacted to assist victims in collecting the restitution orders entered by the court. *See* 1982 U.S.C.C.A.N. 2515, 2539; *see also* 1987 U.S.C.C.A.N. 2137, 2147, *cited in United States v. Mindel,* 80 F.3d 394, 398 (9th Cir.1996). Thus, although the repealed section 3663(f)(2) imposed a limit upon the power of a sentencing judge to enforce restitution coincident with the probationary period, victims were not to be left completely out in the cold. The Victim/Witness Protection Act does not mean, and cannot logically be interpreted to mean, that a defendant's obligation to make restitution terminates after a finite period of time. *See United States v. Soderling,* 970 F.2d 529, 535 n. 12 (9th Cir. 1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2446, 124 L.Ed.2d 663 (1993). "The [Victim/Witness Protection Act] does not require an order of restitution to be limited in duration," *House,* 808 F.2d at 511–12. If this were so, then the Rostoffs have managed to escape their obligation to make the victim whole because the mere passage of time has set them free.

It is not so. The Rostoffs are not free. This is not a game of football, where the Rostoffs can claim victory against the FDIC simply by running out the clock in the fourth quarter of play. The government correctly points out the error in the Rostoffs' fatuous logic: if the Rostoffs' interpretation of the law of restitution were indeed true, there would be a strong incentive for a defendant not to make a good faith effort to satisfy a court's restitution order in a timely fashion. This interpretation is supported by the Antiterrorism and Effective Death Penalty Act of 1996, which repealed the contested section.

■ Incarceration, probation, and restitution are separate penalties, each with their own rationale. Historically, restitution has been used to force the criminal to yield to the victim the fruits of the crime, thereby making the crime worthless to the criminal. *See Fountain,* 768 F.2d at 800; *see also* Note, Victim Restitution in the Criminal Process: A Procedural Analysis, 97 Harv.L.Rev. 931, 933–34 (1984). Such punishment becomes comparatively worthless if it terminates without being satisfied. Satisfaction is the key: restitution that is not paid in full by its very nature imposes a continuing obligation on the perpetrator(s). The Rostoffs ought not—and under the law they cannot—escape their duty to make the victims of their plot financially whole.[9] Therefore, nothing in the Vic-

8. The Seventh Circuit in *Fountain* upheld the constitutionality of the Victim/Witness Protection Act and an order of restitution against an indigent defendant. In making its ruling, the court wrote that section 3579(f)(2)(B), the predecessor statute to the newly repealed section 3663(f)(2)(B) "limits the period within which restitution is due: so far as relevant to this case, the outer limit is five years after the defendant is released from prison." *Fountain,* 768 F.2d at 803. Despite the Seventh Circuit's clarification in *House,* the cases cited by the Rostoffs adopted the analysis in *Fountain,* taking no notice of *House.* The Fourth Circuit's decision in *Bruchey* cites the above sentence from *Fountain, see Bruchey,* 810 F.2d at 459; the Sixth Circuit in *Joseph* cites solely to the *Bruchey* decision, *see Joseph,* 914 F.2d at 786; and the Tenth Circuit in *Diamond* cites solely to the *Joseph* decision, *see Diamond,* 969 F.2d at 969.

9. This Court also rejects out of hand the contention—added as an apparent afterthought by both Rostoffs—that the extension of their restitution obligation violates their right to due process of law under the Fifth Amendment and their right to a trial by jury under the Seventh Amendment. "As a general matter, there is no constitutional right that a jury determine any aspect of a defendant's sentence." *United States v. Brown,* 744 F.2d 905, 908 (2nd Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984). Restitution is not barred by the Seventh Amendment because restitution occurs only after an adjudication of guilt. *Id.* at 910. In addition, the Second, Eighth, Ninth, Tenth, and Eleventh Circuits have held that the Victim Act does not transform a restitution order issued as part of a sentence into "an action at common law" within the meaning of the Seventh Amendment. *See Keith,* 754 F.2d at 1391 and cases cited therein. Moreover, each Rostoff was presented the opportunity to be heard at their initial sentencing and subsequent resentencing hearings on the issue of restitution, thus preserving their Fifth Amend-

tim/Witness Protection Act, as it read at the time of the Rostoffs' sentencings, prevents the government from maintaining these civil actions on behalf of the FDIC.

### B. *The Debt Collection Act*

■ The United States Code has a provision to cover precisely the situation that exists in this case. The Debt Collection Act, 28 U.S.C. § 3001, *et seq.*, supports both the public policy encouraging adherence to court-ordered restitution orders under the Victim/Witness Protection Act as well as the letter and spirit of the law as codified in 18 U.S.C. § 3663. It provides the "civil procedures for the United States ... to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1).[10] In the definitions section, 28 U.S.C. §§ 3002(1)–(16), judgment is defined as "a judgment, order, or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding a debt." 28 U.S.C. § 3002(8). Debt is defined as "an amount that is owing to the United States on account of a ... *fine,* assessment, penalty, *restitution* ...." 28 U.S.C. § 3002(3)(B) (emphasis added).

The Debt Collection Act has been interpreted as providing the government with the express authority to enforce criminal fines by way of civil proceedings. *See United States v. Coluccio,* 19 F.3d 1115, 1116 (6th Cir.1994) (holding that the Debt Collection Act applies to the collection of criminal fines). In researching the legislative history surrounding the passage of the Debt Collection Act, the *Coluccio* court determined that "the law was enacted to create a comprehensive statutory framework for the collection of debts owed to the United States government, including criminal fines." *Id.* at 1116 (quoting H.R.Rep. No. 101–736, 101st Cong., 2d Sess. 23 [1990], *reprinted in* 1990 U.S.C.C.A.N. 6472, 6630, 6631). Thus, according to the Sixth Circuit, the only court to examine this

particular issue, an unpaid criminal fine is a debt owing to the United States and thus properly subject to a lawsuit under the Debt Collection Act.

■ An order of restitution is due the victim until satisfied, *see Soderling,* 970 F.2d at 535 n. 12; *House,* 808 F.2d at 511, or until at least twenty years from the date of the entry of judgment, *see* 18 U.S.C. § 3613(b). As with unpaid fines, courts have acknowledged the government's right to pursue a civil action in order to recover a monetary judgment where a restitution order remains unpaid. *See Joseph,* 914 F.2d at 786 ("The life of a restitution order is expressly limited by § 3663(f) [repealed 1996]. If [the federal agency] is dissatisfied with the amount of restitution recovered, it may pursue a civil action in which the defendant will be estopped from denying the essential allegations of the offense."); *Bruchey,* 810 F.2d at 461 ("If the restitutionary order fails to satisfy the victim, he can seek a civil judgment when the [sentencing] court's jurisdiction ends or even while the restitutionary order is in effect.") (citations omitted). This is precisely the situation faced by the government here: two weeks before the end of the Rostoffs' probationary period, the government—obviously dissatisfied with the amount of restitution paid—filed this civil suit in accordance with the Debt Collection Act.

### C. *Amount of Restitution*

■ What remains for decision? In this civil action the Rostoffs are estopped from contesting the essential allegations of their conviction in *Rostoff I.* Title 18, U.S.C. § 3663(e) (repealed 1996) provided that:

A conviction of a defendant for an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal

---

ment right to due process. *See United States v. Florence,* 741 F.2d 1066, 1067–69 (8th Cir.1984).

**10.** Courts have held that the Victim/Witness Protection Act does not itself transform restitution orders into civil judgments. *See Mindel,* 80 F.3d at 398 (citing *United States v. Johnson,* 983 F.2d 216, 220 [11th Cir.1993] [stating that "the (Vic-

tim/Witness Protection Act) makes civil remedies available to collect restitution; it does not make restitution a civil judgment, which the district court cannot revoke"] ). The proper remedy for the United States, as a victim, seeking to obtain a civil judgment on an order of restitution, is to bring a suit under the Debt Collection Act.

civil proceeding ... to the extent consistent with State law, brought by the victim. *Id. See also United States v. Porter,* 90 F.3d 64, 69 (2nd Cir.1996) (stating that an order of restitution estops a defendant from denying the essential allegations of the crime in any future civil proceeding); *Corporacion Insular de Seguros v. Reyes Munoz,* 849 F.Supp. 126, 133 (D.P.R.1994) (holding that the conviction of defendants precludes them from denying any essential allegation of the crime in a subsequent civil proceeding).

 Here, while the judgments against the Rostoffs set forth the orders of restitution in straightforward terms, the trial transcript reveals concern about the Rostoffs' ability to pay. This concern explains Judge Zobel's cap on the total amount of restitution; the instruction that the amount to be paid be exclusive of interest; and the instruction that should any amount be outstanding—with "no possibility" of it being repaid—at the end of Rostoffs' probation, it was to be remitted.[11] *See Rostoff,* Crim. No. 92–10006–01–Z, Judgment at 5–6; *Rostoff,* Crim. No. 92–10006–02–Z, Judgment at 7–8; Trial Transcript at 91; *see also* 18 U.S.C. § 3664(a) (requiring sentencing courts to consider the financial resources of the defendant and the financial needs and earning ability of the defendant, as well as other factors deemed appropriate, in determining a restitution amount under the Victim/Witness Protection Act).

This Court is satisfied that a genuine dispute exists as to the "possibility" and the then present ability of the Rostoff brothers to pay the remaining restitution at the end of the probation period. These facts are material to determining the amount of restitution that can be converted into a civil judgment. *See United States v. Mahoney,* 859 F.2d 47, 52 (7th Cir.1988) ("[A]n impossible order of restitution ... is nothing but a sham, for the defendant has no chance of complying with the same, thus defeating any hope of restitution and impeding the rehabilitation process."); *see also* 18 U.S.C. § 3664(a).

### IV. Conclusion

Accordingly, this Court *GRANTS* the government's Motion for Summary Judgment only as to the Rostoffs' liability for satisfying Judge Zobel's restitution order, *DENIES* the Rostoffs' Motion for Summary Judgment, and *RESERVES* for trial the question of the precise amount of damages owed by the Rostoffs.

---

**11.** This Court hastens to add that Judge Zobel's statement that the Rostoffs can seek to remit the debt at the end of their probation if there was no possibility of the amount being paid, Trial Transcript at 91, does not mean that the entire amount is automatically forgiven. The Rostoffs must file a motion with the Court to remit the amount. Presumably, this will be a contested issue at the pending trial.