USCA1 Opinion

 

 United States Court of Appeals For the First Circuit
No. 97-1940 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. STEVEN M. ROSTOFF AND DAVID R. ROSTOFF, Defendants, Appellants. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] Before Torruella, Chief Judge, Cyr, Senior Circuit Judge, and Stahl, Circuit Judge. Michael J. Traft with whom Carney & Bassil was on brief for
appellants. Christopher Alberto, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, was on brief for
appellee.
January 7, 1999 STAHL, Circuit Judge. Defendants-appellants Steven and
David Rostoff (the "Rostoffs") appeal the government's successful
use of the Federal Debt Collection Procedures Act ("FDCPA"),
codified at 28 U.S.C. 3001 et seq., to obtain a civil judgment in
the amount of the Rostoffs' outstanding obligations under an order
of restitution previously issued pursuant to a provision of the
Victim Witness Protection Act ("VWPA"), 18 U.S.C. 3663. We
affirm in part and vacate and remand to the district court for
further proceedings. I. Background Together with separately sentenced co-conspirator James
Harris, the Rostoffs fraudulently induced the Bank for Savings, a
federally insured financial institution, to grant ill-advised loans
totaling over $30 million to investors in the Rostoffs' real estate
schemes. Collection efforts on these loans apparently soured
after the crash of the New England real estate market. Investigation of the bank's subsequent failure uncovered the
brothers' wrongdoing, and the United States prosecuted the Rostoffs
for bank fraud, false statements, and conspiracy. After
conviction, the district court imposed on each Rostoff a sentence
that included a prison term, two years of supervised release, and
an order of restitution to the FDIC as successor-in-interest to the
failed bank. The order was not specific as to amount. Rather, it
provided only that total restitution was "not to exceed $650,000." The order also required the Rostoffs to pay in installments as
determined by the probation department. During supervised release, the Rostoffs paid very little
of their restitution obligation -- David paid $8,200 and Steven
paid $7,463.21. David Rostoff did, however, actively and
successfully work to restructure and refinance two assets in which
he had certain partnership interests: the Tanglewood Apartments and
the Hickory Ridge Apartments. Steven Rostoff had an interest only
in the Tanglewood complex. As part of the refinancing scheme, the
Rostoffs transferred their respective interests in these assets to
the wife of David Rostoff and that of their co-conspirator Harris. In violation of the terms of their supervised release, these
transfers were not reported to the probation office until near the
very end of the period. Indeed, the Rostoffs made several false
representations to their respective probation officers regarding
the state of their interests in the assets, and they never reported
the identities of the recipients of the transfers. Furthermore,
David Rostoff actively concealed contacts with co-conspirator
Harris that he was also required to report; at these forbidden
contacts, the two planned and executed the refinancing scheme. Two weeks before the end of supervised release, which
terminated on March 31, 1996, the United States initiated separate
civil actions against each brother. The government essentially
sought a declaration that the Rostoffs' restitution debt was
outstanding and enforceable. The two cases were consolidated into
the action now under review. The Rostoffs initially sought to have the civil action
dismissed on the ground that the restitution order expired, as a
matter of law, at the termination of their respective periods of
supervised release. The district court denied this motion, holding
that the statutory language on which the Rostoffs relied limited
only "the time period during which the [sentencing] court . . . can
require a defendant to make restitution payments, [and] not the
time period during which a civil suit by a victim to enforce the
restitution order may be prosecuted." United States v. Rostoff,
956 F. Supp. 38, 42 (D. Mass. 1997). The United States and the
Rostoffs then filed cross-motions for summary judgment. The
district court denied the Rostoffs' motion, again rejecting the
contention that the restitution orders had expired as a matter of
law, and also rejecting constitutional claims under the Fifth and
Seventh Amendments "out of hand." Id. at 44 n.9. The district
court granted the government's motion in part, ruling that the
Rostoffs were liable for the unpaid balance of the restitution
orders. However, based on remarks made by the sentencing court
suggesting that restitution would be remitted at the end of the
period of supervised release if the Rostoffs had no ability to pay,
and on the indeterminate "up to $650,000" language of the order
itself, the district court decided to hold a trial to determine the
amount of restitution owed. The primary issue at trial was the
Rostoffs' ability to have paid the restitution order during the
supervised release period. After the four-day trial, the court
initially entered judgment against each brother for the unpaid
balance of the $650,000 restitution order, plus a ten percent
surcharge pursuant to 28 U.S.C. 3011(a). After reconsidering the
question of Steven Rostoff's ability to have paid the entire
balance, the court subsequently reduced the judgment against him to
$159,000. The judgment against David Rostoff remained unchanged. The Rostoffs then filed this appeal. On appeal, the Rostoffs assert multiple claims of error. First, they again contend that the order of restitution expired at
the end of the period of supervised release and that they may not
be held liable for its unpaid balance. Second, they claim that the
government may not use the FDCPA to collect the restitution debt. Finally, they assert violations of their constitutional rights,
clear error in the assessment of their abilities to pay the
restitution, and lack of authorization for the assessment of the 3011(a) surcharge. We address these issues seriatim. II. The Enforceability of the Restitution Order Relying on the language of 18 U.S.C. 3663(f)(2) and on
the decisions of several of our sister circuits, the Rostoffs
contend that the order of restitution terminated at the end of
their period of supervised release and is therefore uncollectible. Their reliance is misplaced and we affirm the decision of the
district court. The disputed portion of the applicable version of 18
U.S.C. 3663(f) states: (1) The court may require that such defendant make restitution under this section within a specified period or in specified installments. (2) The end of such period or the last such installment shall not be later than- (A) the end of the period of probation, if probation is ordered; . . . . (3) If not otherwise provided by the court under this subsection, restitution shall be made immediately.
18 U.S.C. 3663(f) (1994). Because this dispute is purely a
matter of statutory interpretation, we review the district court's
ruling de novo. See United States v. De Luca, 137 F.3d 24, 39 (1st
Cir. 1998), cert. denied, 67 U.S.L.W. 3207 (Oct. 6, 1998). We agree with the district court that subsection (f)
controls the authority of the sentencing court. The subsection
contains no provisions regarding the enforcement powers of the
district court in this case. It simply authorizes the sentencing
court to impose an order of restitution. In the normal case,
payment of restitution is due immediately. See 18 U.S.C. 3663(f)(3). In its discretion, the sentencing court may elect to
make restitution due in installments, or at the end of a specified
period. See 18 U.S.C. 3663(f)(1). The sentencing court's
discretion in this regard is constrained: payment must fall due by
the end of the period of supervised release. See 18 U.S.C. 3663(f)(2). The Rostoffs argue that 18 U.S.C. 3663(f)(2) governs
the time in which the restitution order may be enforced. Under
their view, the unpaid restitution obligation was not delinquent at
the end of the period of supervised release. Rather, it ceased to
exist. We do not agree. The fact that the last payment of
restitution is due at the end of supervised release has nothing to
do with the duration or expiration of the restitution order. SeeUnited States v. House, 808 F.2d 508, 511 (7th Cir. 1986); United
States v. Keith, 754 F.2d 1388, 1393 (9th Cir. 1985). Common sense
dictates that failure to pay at the time due renders payment
overdue; it does not abate the obligation entirely. See United
States v. Soderling, 970 F.2d 529, 535 & n.12 (9th Cir. 1992)
(noting that a restitution order is "extinguished only by
satisfaction, not by the passage of time"). The Second Circuit has
recently recognized, for example, that restitution orders under the
VWPA can be enforced for twenty years, where the defendant fails to
make the payments due in the payment period. See United States v.
Berardini, 112 F.3d 606, 611 (2d Cir. 1997). This reasoning
reflects the approach, endorsed by the Seventh and Ninth Circuits,
that the VWPA should be read to protect victims and not defendants. See House, 808 F.2d at 508; Keith, 754 F.2d at 1388; see also 1982
U.S.C.C.A.N. 2515, 2515 ("The purpose of [the VWPA] is to
strengthen existing legal protections for victims and witnesses of
Federal crimes.") (emphasis added); id. at 2537 (uncertainties in
damages determinations should be resolved with "a view toward
achieving fairness to the victim")(emphasis added). Viewing subsection (f) in the context of the whole of 3663 confirms this view. See Kelly v. Robinson, 479 U.S. 36, 43
(1986) ("In expounding a statute, we must not be guided by a single
sentence or member of a sentence, but look to the provisions of the
whole law and to its object and policy."). Enforcement of the
restitution order is governed not by subsection (f), as the
Rostoffs contend, but by subsection (h), which provides: An order of restitution may be enforced- (1) by the United States- (A) in the manner provided for the collection of payments and fines in [18 U.S.C. 3611-3615]; or (B) in the same manner as a judgment in a civil action; and (2) by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action.
(emphasis added). The incorporated citations in subsection
(h)(1)(A) make, inter alia, every fine a lien in favor of the
United States. See, e.g., 18 U.S.C. 3613. Such liens may be
enforced for twenty years. Id. Similarly, judgments in favor of
the government in civil actions are enforceable according to the
law of the state in which the district court sits. See Fed. R.
Civ. P. 69(a). In Massachusetts that period is twenty years. SeeMass. Gen. Laws ch. 260, 20. If the Rostoffs' reading were
correct, and the restitution order was limited by the probationary
period, it would render both these provisions of subsection (h)
nugatory. To avoid this complication, the Rostoffs appear to claim
that subsection (h) applies only to orders of restitution that are
due immediately; for example, they distinguish contrary holdings in
House and Keith on the grounds that they concern only restitution
orders under subsection (f)(3) and not under subsection (f)(2). There is nothing in subsection (h) that so restricts its scope. Moreover, the construction advanced by the appellant would create
the anomalous result that an order of restitution that is due
immediately expires twenty years after it is issued, while an order
of restitution due in the future expires the instant its due date
passes. We can identify no plausible logic that would support such
a result. Indeed, this construction gives defendants an incentive
to "run[] out the clock in the fourth quarter of play" rather than
to redress their wrongs. Rostoff, 956 F. Supp. at 43. Such an
incentive would be entirely at odds with the express "object and
policy" of the VWPA of which subsection (f) is a part. See S. Rep.
No. 97-532 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2536 ("The
premise of this section is that the court . . . should insure that
the wrongdoer make good[], to the degree possible, the harm he has
caused his victim."); see also id. at 2537 ("[T]he bill encourages
better monitoring and enforcement procedures."). Furthermore, making a restitution obligation coterminous
with the period of supervised release appears to defeat one of the
purposes of the VWPA. Congress expressly stated that the VWPA
authorized courts for the first time to order restitution
independently of probation. See id. at 2536. Congress felt that
restitution had too long been a poor stepchild of sentencing,
rarely ordered and rarely enforced, and that victims were suffering
as a result. Id. The VWPA authorizes restitution "in addition to
any other penalty authorized by law," 18 U.S.C. 3663(a)(1), not
as an adjunct to another penalty, such as supervised release. The
Rostoffs' construction defeats the independence of the penalty of
restitution. Nevertheless, the Rostoffs urge us to accept their
position, arguing that certain decisions of our sister circuits
have adopted their interpretation of the relevant language. SeeUnited States v. Diamond, 969 F.2d 961, 969 (10th Cir. 1992);
United States v. Joseph, 914 F.2d 780, 786 (6th Cir. 1990); United
States v. Bruchey, 810 F.2d 456, 459-60 (4th Cir. 1987). As a
preliminary matter, we note that none of these cited cases is
factually on point: each involved the sentencing court's requiring
the defendant before the period of probation had begun to enter
into a consent agreement or to sign a promissory note that included
payment dates beyond the period of supervised release. In doing
so, the sentencing courts under review exceeded their authority to
create a schedule of payments, authority that is expressly limited
by subsection (f)(2) to the period of supervised release. Cf.United States v. Hensley, 91 F.3d 274, 276 (1st Cir. 1996) (holding
that courts have no inherent authority to order restitution but
must do so only as authorized by strictly construed statutes). Here, by contrast, we deal with a victim's attempt to use the
district court to secure the restitution due to it at the close of
the offenders' period of supervised release. Similarly, part of the underlying rationale of each cited
decision was the fact that a promissory note or consent agreement
would impermissibly restrict the sentencing court's ability to
modify the restitution order during the probationary period. Congress expressly authorized the sentencing court to make such
modifications. See 18 U.S.C. 3663(g) & (i)(3); see also United
States v. Springer, 28 F.3d 236, 239 n.2 (1st Cir. 1994)
(sentencing court may modify restitution order during supervised
release if it proves "unreasonably onerous"). Here, however, the
Rostoffs had the entire period of supervised release in which to
seek modification of the restitution order. Yet they failed to do
so. We see no reason to allow this failure to affect our
interpretation of the statute. And in any case, we note that
enforcement of judgments under the FDCPA is continually subject to
the equitable supervision of the district court. See 18 U.S.C. 3013. In any event, to the extent the reasoning of the cited
courts may be inconsistent with our result, we find the decisions
unpersuasive. Following the lead of the Seventh and Tenth
Circuits, we conclude that 18 U.S.C. 3663(f)(2) does not limit
the time in which a restitution order may be enforced. See House,
808 F.2d at 511 (" 3579(f)(2) . . . limits the duration of a grace
period established under 3579(f)(1) and does not terminate the
obligation to make restitution."); Keith, 754 F.2d at 1393
(similar). In this case, the sentencing court ordered restitution of
up to $650,000 payable over the period of supervised release. The
last payment of the restitution obligation was therefore due on the
final day of the supervised release. After that time, the Rostoffs
became delinquent in their restitution obligation and the
government had a right to seek payment. We affirm the district
court's determination in this regard. III. The Government's Use of the FDCPA The Rostoffs also challenge the government's use of the
FDCPA to collect on the restitution debt. Before turning to the
substance of this challenge, we note that with the exception of
the ten percent surcharge the government did not have to rely on
the FDCPA as the statutory basis for its suit. The United States
has other methods of collecting amounts owed to it. See 28 U.S.C. 3001(b) (providing that collection procedures specified under
other Federal laws govern where inconsistent with the FDCPA); 28
U.S.C. 3003(b) (providing that the United States retains its
authority under laws other than the FDCPA to collect debts "arising
in a criminal case"); United States v. Vitek Supply Corp., 151 F.3d
580, 585 (7th Cir. 1998); see also Fed. R. Civ. P. 64 & 69
(permitting the government to secure satisfaction of, and enforce,
judgments according to the law of the state in which the district
court sits); see generally Cluster v. McCutcheon, 283 U.S. 514,
516-19 (1931) (discussing application of various state statutes to
executions on judgments recovered by the United States). If it
chooses to do so, the United States may enforce restitution orders
using state procedures without first reducing them to civil
judgments. See United States v. Timilty, 148 F.3d 1, 3 (1st Cir.
1998). However, because the government did request at least the
ten percent surcharge pursuant to the FDCPA, we will assume that
its entire collection attempt was predicated on the FDCPA and hold
that the government properly collected the restitution debt owed to
the FDIC through this statutory vehicle. Congress enacted the FDCPA to create procedures by which
the United States could more efficiently collect its debts without
relying on a patchwork of state laws. See United States v.
Bongiorno, 106 F.3d 1027, 1036 (1st Cir.)(citing H.R. Rep. No. 101-
736, at 23-25 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6631-
33), reh'g en banc denied, 110 F.3d 132 (1997) (elaborating on the
rationale of the panel decision). Restitution is expressly listed
as a type of debt for which the FDCPA is an appropriate collection
vehicle. See 28 U.S.C. 3002(3)(B). In Bongiorno, we held,
however, that certain restitution debts did not qualify for
collection using the FDCPA. We identified the relevant inquiry as
being "aimed at determining to whom the debt is owed and to whose
benefit the proceeds of the debt will inure when paid." Bongiorno,
106 F.3d at 1037. Thus, only restitution debts owed to the United
States may be collected via the FDCPA. See id. at 1039. In Bongiorno, the United States had attempted to use the
FDCPA to collect a restitution order entered for violation of the
Child Support Recovery Act. Because the proceeds of the collection
effort would inure directly to a private party (Bongiorno's
daughter) and not to the sovereign, we decided that the FDCPA was
not the proper vehicle for collecting the restitution. See 106
F.3d at 1039. In the instant case, by contrast, we are faced with
an entirely different situation: the proceeds will go directly into
the coffers of the FDIC. Cf. United States v. Coluccio, 19 F.3d
1115, 1117 (6th Cir. 1994) (criminal fine payable to the United
States is a "debt" under the FDCPA); United States v. Gelb, 783 F.
Supp. 748 (E.D.N.Y. 1991) (holding that because RICO statute calls
for restitution to the United States the restitution order is a
debt properly collectible under the FDCPA). The Rostoffs could not and do not claim that the FDIC is
"private." Rather, they claim that the restitution was originally
owed to the Bank for Savings. This fact is relevant, they contend,
because the definition of "debt" under the FDCPA expressly excludes
amounts "owing under the terms of a contract originally entered
into by only persons other than the United States." 28 U.S.C. 3002(3)(B). Also, the Rostoffs cite a snippet of legislative
history to the effect that a loan made by a failed, federally
insured bank would not be collectible under the FDCPA. See 136
Cong. Rec. H13288 (daily ed. Oct. 27, 1990) (statement of Rep.
Brooks). Hence, they conclude that the restitution in this case is
not a "debt" under the FDCPA. We do not accept this argument. The Rostoffs' debt is
owing under an order of restitution, not under the terms of a
typical private contract, such as a loan agreement. Furthermore,
the victim identified in the restitution order is the FDIC. Thus,
neither the definitional exclusion nor the cited legislative
history is apposite. Cf. 1990 U.S.C.C.A.N. 6630, 6636 ("'Debt' is
defined broadly to include amounts owing to the United States on
account of a . . . loan insured or guaranteed by the United States
as well as other amounts originally due the United States.")
(emphasis added). The controlling question remains: Who will
receive the beneficial interest? In this case, it is the
government. Therefore, the FDCPA is a proper collection vehicle. IV. The Alleged Violation of Constitutional Rights The Rostoffs argue that the "automatic" conversion of the
restitution into a civil judgment long after the criminal case has
ended violates their rights under the Fifth and Seventh Amendments. We reject this argument. A. The Fifth Amendment The Rostoffs claim that they were deprived of property
without due process of law because the district court issued a
civil judgment reflecting the unpaid balance of a restitution order
without consideration of their economic circumstances. Factually
speaking, the Rostoffs are wrong, so we need not determine as a
matter of law whether failure to consider an offender's economic
circumstances would implicate the Fifth Amendment. The district court held a four-day trial specifically on
the amount of restitution owed and the Rostoffs' ability to pay. The Rostoffs had an opportunity and did in fact present evidence at
that trial. The court made findings as to the Rostoffs' economic
circumstances. Indeed, the court noted that it was not speculating
as to future assets or earnings but rather working from the basis
of what the Rostoffs could reasonably have paid during supervised
release. Finally, the court actually reduced the initial judgment
against Steven Rostoff because of its uncertainty as to whether he
had sufficient assets from which to pay restitution. There was
nothing "automatic" about the court's arriving at the final
figures. B. The Seventh Amendment The Seventh Amendment guarantees a right to a jury trial
"[i]n Suits at common law, where the value in controversy shall
exceed twenty dollars." "The characterization of a proceeding for
the purpose of determining the right to a jury trial should focus
on the nature of the right adjudicated, not on the methods used to
enforce the resulting judgment." Bonnie Arnett Von Roeder, Note,
The Right to Jury Trial to Determine Restitution under the Victim
and Witness Protection Act of 1982, 63 Tex. L. Rev. 671, 673
(1984). In other words, "[t]he enforcement method does not . . .
determine the nature of the [restitution] order." United States v.
Watchman, 749 F.2d 616, 617 (10th Cir. 1984). The nature of
restitution is penal and not compensatory. See Kelly, 479 U.S. at
52 & n.14 (holding as a general matter that restitution is punitive
and not compensatory, and suggesting in dicta that the same
analysis would apply to restitution orders under the VWPA). All
circuits that have decided the issue have held that restitution
under the VWPA is penal and that the Seventh Amendment simply does
not apply to a determination of the amount of a restitution order.
See, e.g., United States v. Palma, 760 F.2d 475, 479-80 (3d Cir.
1985) (citing cases from the Second, Eighth, Ninth, Tenth, and
Eleventh Circuits); but cf. United States v. Dudley, 739 F.2d 175,
177 (4th Cir. 1984) (holding with regard to a different issue that
restitution is both compensatory and penal). In another context,
this Circuit has concluded that the VWPA's restitution provision is penal, not compensatory, in nature. See United States v.
Savoie, 985 F.2d 612, 619 (1st Cir. 1993). Accordingly, no jury
trial is required to determine the amount of a restitution order. We see no reason why enforcement of a restitution order
"in like manner as a civil judgment," 18 U.S.C. 3663(h), would
somehow re-introduce a jury requirement. To require a jury trial
to enforce restitution ordered at sentencing would have the same
effect as requiring a jury trial ab initio. The original
restitution order would be worthless, uncollectible without an
additional jury trial. Such a requirement runs counter to the
decisions in Kelly and in our sister circuits. Supra. We affirm
the trial court's rejection of the Seventh Amendment claim. SeeRostoff, 956 F. Supp. at 44 n.9. V. The Rostoffs' Assets The Rostoffs next contend that there was no evidence from
which the district court could find that they owned valuable assets
from which they could pay the restitution orders. We review a
district court's factual findings for clear error. See Fed. R.
Civ. P. 52(a). Our deference is even greater when such findings
are based on determinations regarding the credibility of witnesses. See Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985). After reviewing all the evidence, we must be "left with the
definite and firm conviction that a mistake has been committed." Anderson, 470 U.S. at 573 (quoting United States v. United States
Gypsum Co., 333 U.S. 364, 395 (1948)). We have no such conviction
with regard to this case. The Rostoffs do not contest that the restitution order
obligated them to marshal whatever assets they had at their
disposal to pay the designated victim. See United States v.
Rostoff, 966 F.2d 1275, 1278 (D. Mass. 1997) (citing 18 U.S.C. 3664). Rather, they argue that they had no such assets, or at
least that the assets were not sufficiently valuable to ground the
district court's conclusion that the Rostoffs had the ability to
pay the restitution orders. In particular, they claim the district
court mistakenly assigned value to the Rostoffs' respective
interests in Tanglewood Limited Partnership and to David Rostoff's
interest in a Boca Raton luxury condominium and the Hickory Ridge
Apartments. Our examination of the record convinces us that the
district court correctly determined that the Rostoffs' interests in
all three assets had value, and that this value was sufficient to
find that the brothers had the ability to pay the restitution
order. As to both the Tanglewood and Hickory Ridge Apartments, the
Rostoffs' efforts during supervised release prompted certain
lenders to forgive a substantial amount of indebtedness and to
refinance the properties. To the extent these efforts improved the
equity positions of the partners, the Rostoffs failed to marshal
these benefits to pay off the restitution as required. They
instead transferred their interests for no consideration to the
wife of David Rostoff and that of his co-conspirator Harris. There
is evidence that one of the women to whom the interests were
transferred valued her 50% interests in Tanglewood and Hickory
Ridge -- which the Rostoffs assert were valueless -- at nearly four
million dollars. The district court had an opportunity to judge
the credibility of the witnesses and specifically adopted the
calculations of the government's expert with regard to the income-
generating potential of the properties. Furthermore, the Rostoffs
do not appear to contest the court's finding, based on the
testimony of the government's expert, that funds in the form of
management fees were siphoned off to David Rostoff and his co-
conspirator. As to the luxury condominium, the deed lists David
Rostoff as a tenant-in-common. In light of these facts, we
discern no error, let alone clear error, in the district court's
conclusions. VI. The Surcharge The Rostoffs complain that there was no statutory
authority for the ten percent surcharge added to the judgment in
this case. The government confesses error on this point, but urges
that we remand to the district court to determine whether its
subsequent efforts in the separate civil suit, see supra note 2,
merit imposition of the penalty. Despite their opportunity to do
so, the Rostoffs submitted no reply brief on this or any other
issue, and we therefore assume that they do not contest the
propriety of the inquiry the government proposes. Having
determined that the government correctly concedes error, we
therefore vacate the award of the surcharge and remand to the
district court to address whether the government's efforts during
the pendency of this appeal now entitle the government to the
surcharge and whether the district court has the power to assess
the surcharge in these circumstances. VII. Conclusion For the foregoing reasons, we affirm the decision of the
district court in part, except for the FDCPA surcharge, which we
vacate and remand for proceedings consistent with this opinion. Costs to appellee.